UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

              v.

BRODERICK ROBINSON,

              Defendant.

**DECISION AND ORDER**
10-CR-239S

---

## I. INTRODUCTION

Pending before the Court is a motion (Dkt. No. 342) by defendant Broderick Robinson ("Robinson") for reconsideration of his custody status and for release on bail. Robinson notes in his motion that he has been incarcerated for approximately three years and six months and argues that circumstances have changed to favor release. Specifically, Robinson argues that he has been receiving medication for emotional problems that led him to violate his prior terms of release; the medication supposedly makes him emotionally stable and cooperative. The Government opposes release, arguing generally that nothing in the case has changed and emphasizing the serious nature of the charges against Robinson and his prior unwillingness to abide by release conditions. The United States Probation Office ("USPO") opposes release on the basis that Robinson had a prior opportunity during inpatient treatment to follow a medication regimen and refused to do so.

The Court held a bail review hearing on May 21, 2014. For the reasons below, the Court denies Robinson's motion without prejudice.

## II.     BACKGROUND

This case concerns allegations that Robinson joined the other defendants in the case to support a violent street gang called the Rounds Crew. In the original indictment, filed on August 17, 2010, the Government accused Robinson and others of conspiring to possess and to distribute over 100 kg of marijuana. At arraignment on September 10, 2010, the Court released Robinson on conditions that included a $1,000 signature bond, avoidance of alcohol and controlled substances, and avoidance of any federal, state, or local offenses. (*See generally* Dkt. No. 11.) On October 28, 2010, the Court received a non-compliance report from the USPO detailing how Robinson continued to use marijuana after his release and tested positive on October 4 and October 21, 2010. Per USPO recommendation, the Court took no action at that time. On December 10, 2010, the Court issued a warrant based on a USPO bail violation petition containing three counts. Count One detailed a shoplifting arrest that occurred on December 4, 2010. Count Two detailed positive marijuana tests on September 13 and 21, 2010; October 4 and 21, 2010; and November 16, 2010. Count Three detailed a diluted urine sample. The Court held a violation hearing on December 16, 2010, after which it issued an amended Order Setting Conditions of Release. (*See generally* Dkt. No. 43.) The Court left the violation

petition open but allowed Robinson to remain released, adding the conditions that he undergo inpatient treatment and that he take all medications as prescribed. The USPO filed an amended violation petition on January 19, 2011 that dropped the count concerning diluted urine but added a new Count Three concerning Robinson's expulsion from inpatient treatment for numerous rule violations. A new Count Four detailed that Robinson refused to take medications as prescribed. The Court (Schroeder, *M.J.*, covering) held an initial appearance on the new petition on January 20, 2011 and ordered Robinson detained pending further proceedings. Later, on March 14, 2011, the parties agreed that Robinson should undergo a competency evaluation. The Court put bail violation proceedings on hold at that point. Robinson has been in continuous custody since January 20, 2011.

While arrangements for a competency evaluation ran their course, the Government filed a superseding indictment on June 1, 2012. (*See generally* Dkt. No. 163.) In Count One, the Government accused Robinson of conspiring to engage in racketeering activity. With respect to overt acts, the Government accused Robinson of drug possession on or about July 13, 2009; and capturing a victim who attempted to flee other defendants on August 13-14, 2009. Robinson allegedly dragged the victim back to his co-defendants, who killed the victim, and then hid the gun used in the murder. In Count Four, the Government accused Robinson of conspiring with others to possess and to distribute over 100 kg of

marijuana. In Count Six, the Government accused Robinson and others of maintaining a drug premises. In Count Seven, the Government accused Robinson and others of maintaining a second drug premises. The Court arraigned Robinson on June 11, 2012.

Robinson's competency evaluation eventually concluded, and the Court eventually received a report from the Federal Bureau of Prisons on November 6, 2012. The report is filed under seal, and the Court will not divulge confidential information here. In short, Robinson's evaluators found him competent to stand trial but noted some concern about non-compliance with medication and about opposition to authority. The Court formally accepted the report on February 21, 2013 (Dkt. No. 233) and found Robinson competent to stand trial.

Robinson filed the pending motion on May 7, 2014. In the motion, Robinson notes that he has remained in continuous custody for about three years and six months since his remand date of January 20, 2011. Robinson additionally argues that certain emotional problems "may have caused him to be initially non-compliant with his previous terms and conditions of pre-trial release. Since being properly medicated, he is emotionally stable and cooperative." (Dkt. No. 342 at 3.) At oral argument, Robinson elaborated that he had no opportunity to self-medicate during his last release, and that his mother, Juanita Robinson, would be willing to take him in again. The Government did not address the medical issue directly in its papers but argues generally that nothing in the case is

changed and that Robinson has been unwilling to abide by conditions of release in the past. At oral argument, the Government emphasized the nature of the charges against Robinson, including Robinson's alleged ties to three different murders. The Government also contended that Robinson has made misrepresentations to a grand jury, has represented to a confidential informant that he would attempt to demonstrate incompetency to stand trial, and carries a risk of recidivism.

### III.   DISCUSSION

"The Eighth Amendment to the Constitution states that '[e]xcessive bail shall not be required.' U.S. Const. amend. VIII. Consistent with this prohibition, 18 U.S.C. § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Statutory factors to be considered when assessing flight or danger include the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

With respect to flight risk, "the government carries a dual burden in seeking pre-trial detention. First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *Sabhnani*, 493 F.3d at 75 (citations omitted). "To order detention, the district court must find, after a hearing, that the government has established the defendant's dangerousness by clear and convincing evidence. The rules of evidence do not apply in a detention hearing. Further, the government may proceed by proffer." *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted).

Once the Court has issued a detention order in the manner set forth above, it may reconsider that order and reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *U.S. v.*

*Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted).  Where evidence was available to defendant at the time of the hearing, the hearing will not be reopened.  *See U.S. v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *U.S. v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

  Here, Robinson has not presented any information unknown to him previously that would warrant a change in his custody status.  Robinson continues to face serious racketeering charges related to drug possession, drug premises, and murder.  While Robinson enjoys a presumption of innocence and the Government's allegations are not evidence, the allegations against him worsened with the filing of the superseding indictment.  The pretrial services report from Robinson's original detention in September 2010 noted regular drug use since age 11; Robinson's bail violation petitions indicate that Robinson did not change his drug activity even in the face of Court orders and mandatory inpatient treatment.  *See* 18 U.S.C. § 3142(g)(3)(A) (listing "history relating to drug or alcohol abuse" among factors to consider); *U.S. v. Quartermaine*, 913 F.2d 910, 917 (11th Cir.1990) ("The [Bail Reform] Act [of 1984] specifically provides, however, for consideration of the accused's 'history relating to drug or alcohol abuse.'") (citing 18 U.S.C. § 3142(g)(3)(A)).  Robinson's new professions of maturity and willingness to self-medicate, while perhaps laudable when taken at face value, do not balance well against the entirety of his history of non-compliance.  *Cf. U.S. v. Ard*, No. 10-CR-184, 2011 WL 2421222, at *3 (W.D.N.Y.

June 13, 2011) (Skretny, *C.J.*) ("Defendant's criminal history includes one arrest while under probation supervision and two arrests while released on bail, demonstrating that Defendant is unable to comply with conditions of release."). Meanwhile, the Court harbors concern about releasing Robinson to his mother's residence, given the three orders of protection issued against him in 2007 and 2008 prohibiting contact with his mother. *Cf. U.S. v. Bobbitt*, No. 09-CR-331A, 2013 WL 3049167, at *4 (W.D.N.Y. June 17, 2013) (Scott, *M.J.*) (noting active orders of protection at the time of arrest as a factor in favor of detention); *U.S. v. Mansuryan*, No. 10-10060-03-EFM, 2010 WL 2545989, at *2–3 (D. Kan. June 22, 2010) ("Further militating against release is the fact that Defendant has failed to identify a suitable place for him to reside while out on release."); *but see U.S. v. Norfleet*, 185 F. Supp. 2d 315, 320–21 (S.D.N.Y. 2002) (releasing a defendant despite an order of protection, but where "he was employed, thereby supporting his wife, their two children, and a step child. He was successfully undergoing drug treatment, which he had commenced prior to his arrest, and had consistently tested negative for controlled substances when tested by Pretrial Services.") Robinson's mother even reported to the USPO during preparation of the pretrial services report that Robinson had been violent toward her on two occasions. In the face of refusals to abide by conditions of release, past refusals to take medication with at most a short recent history to the contrary, and prior violent

encounters with family, the Court will not expose Robinson's mother or the community generally to the risk of a violent relapse.

That said, the Court is beginning to feel some frustration that, as of this writing, Robinson has been in continuous custody for over 40 months in a nearly four-year-old case that still has a death-penalty decision pending from the Department of Justice for one defendant. (*See* Dkt. No. 288.) A decision to seek the death penalty could have a drastic impact on the timetable for bringing this case to trial and easily could push Robinson's custody beyond the longest periods of detention that the Second Circuit ever has permitted. *See U.S. v. Speed*, No. 09-CR-329A, 2013 WL 1221479, at *5 (W.D.N.Y. Mar. 25, 2013) (Scott, *M.J.*), *aff'd*, 2013 WL 6531950 (W.D.N.Y. Dec. 12, 2013) (Arcara, *J.*); *U.S. v. Rodriguez*, No. 09-CR-331A, 2012 WL 6690197, at *11 (W.D.N.Y. Dec. 21, 2012) (Scott, *M.J.*). Consequently, the Court's denial of Robinson's motion will be without prejudice to renewal on due-process grounds after December 1, 2014.

## IV. CONCLUSION

For all of the foregoing reasons, the Court denies Robinson's motion for reconsideration of detention (Dkt. No. 342), without prejudice to renewal on due-process grounds after December 1, 2014. Defendant shall remain in custody pending trial.

Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from

persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's order of detention, defendant shall be afforded reasonable opportunity for private consultation with counsel. Additionally, on order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined shall deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case.

In accordance with 18 U.S.C. § 3142(j), nothing in this Decision and Order shall be construed as modifying or limiting the presumption of innocence.

SO ORDERED.

                                           /s Hugh B. Scott
                                           HONORABLE HUGH B. SCOTT
                                           UNITED STATES MAGISTRATE JUDGE

DATED: May 28, 2014